**This document was signed electronically on August 26, 2025, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: August 26, 2025**



**ALAN M. KOSCHIK
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | Case No. 24-51904 |
| ADAM GLENN TRAWICK, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | Judge Alan M. Koschik |
| ) | |

## MEMORANDUM OPINION ON TRUSTEE'S APPLICATION TO EMPLOY RUSS KIKO ASSOCIATES, INC. AS AUCTIONEER

Debtor Adam Glenn Trawick (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 3, 2024. On May 13, 2025, chapter 7 trustee Anthony J. DeGirolamo (the "Trustee") filed his Application for Authority to Employ Russ Kiko Associates, Inc. ("Kiko") as Trustee's Auctioneer (Docket No. 28) (the "Application"). No objections were filed. However, for the reasons set forth in this Memorandum Opinion, the Court will deny the Application.

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference issued by the United States District Court for the Northern District of

Ohio. General Order 2012-7. This is a core matter under 28 U.S.C. § 157(b)(2)(A) and the Court has authority to enter final orders in this matter. Pursuant to 28 U.S.C. § 1409, venue in this court is proper.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 13, 2025, the Trustee filed the Application seeking to hire Kiko to sell a 2013 GMC Sierra (the "Vehicle") that is owned by the Debtor and is property of the Debtor's bankruptcy estate. In his bankruptcy schedules, the Debtor represented that the value of the Vehicle was $12,987.

The Application provides that

> Subject to court approval, the Trustee and the Auctioneer have agreed that the Auctioneer is to be compensated as follows: commission of 35% for a sale price of $0 to $49.99; 30% for a sale price of $50.00 to $499.99; 20% for a sale price of $500.00 to $999.99; 15% for a sale price of $1,000.00 to $4,999.99; and (10%) for a sale price of $5,000 and above, paid via a buyer's premium of 10% added to the final bid.

(Application ¶ 4.) Although this description suggests that the buyer's premium would be the mechanism for collecting the sale commission, the auction sale contract attached to the Application as Exhibit A (Docket No. 28 Ex. A) (the "Proposed Contract") provides that the commission was to be paid *in addition* to a buyer's premium, not "via" a buyer's premium. The Proposed Contract provided that "in the event that Internet bidding will be provided, a 10% Buyer's Premium will be paid by Internet Purchasers to Kiko and retained by Kiko. Internet Purchasers are responsible for all shipping and insurance charges." The Proposed Contract provided that the auction would be online only, so this buyer's premium provision would be in effect with respect to any possible sale.

The proposed compensation for Kiko is unusual compared to the compensation approved for other auctioneers employed in consumer bankruptcy cases filed in this court. In most, if not

all other consumer cases, auctioneers are paid a commission on the sale price, often 10 percent, along with reimbursement of actual and necessary out of pocket expenses. Therefore, as was the Court *In re Leedy*, 2021 WL 3671115 (Bankr. N.D. Ohio Aug. 13, 2021) (Kendig, J.), this Court is unclear why the Trustee needs to hire an auctioneer to conduct an online auction with a complex fee structure to sell a 12-year-old vehicle estimated to be worth only $13,000. These reservations caused the Court to set the Application for hearing.

The Court held a hearing on the Application on July 23, 2025 (the "Hearing"). The Trustee appeared in person. At the Hearing, the Trustee confirmed that the buyer's premium would be paid in addition to the commission, but further stated that all expenses would come out of the buyer's premium. The Application noted a number of anticipated expense line items, three out of four of which were proposed to be calculated on the basis of the auction sale price:

    a. Proxibid online bidding platform fee of 2 percent of the gross proceeds of the sale;

    b. Credit card transaction fees of 4 percent of the gross proceeds of the sale;

    c. Advertising/promotional charges of 2 percent of the gross proceeds of the sale; and

    d. Facility rental fee of $75.00.

(Application ¶ 5.)

However, apparently inconsistent with the Application, the Proposed Contract provides that the "costs for advertising including but not limited to signs, flyers, mailing(s), and all preparation, promotional expenses" would be paid in the amount of "actual."

The Trustee's statement at the Hearing that the advertising expenses would be taken from the buyer's premium also contradicts the Proposed Contract, which provides that advertising expenses would be based on actual expenses incurred and paid separately from the buyer's premium. But even if that actual expense provision were excised from the Proposed Contract,

and even if the first two line items (Proxibid platform fee of 2 percent and credit card transaction fee of 4 percent, totaling 6 percent of the transaction value) were deducted from the buyer's premium, the 10 percent buyer's premium would still not fully align with the proposed expense reimbursement structure. At least a portion of the buyer's premium would serve as an additional commission on the sale. Moreover, the Proposed Contract does not provide, as the Trustee contends it does, that the buyer's premium would cover any reimbursable expenses. The Court is troubled by the inconsistences between and among the Application, the Proposed Contract, and the statements of the Trustee on the record during the Hearing, which make it difficult for the Court to discern what terms the Trustee is asking the Court to approve.

### **LEGAL ANALYSIS**

The Court's analysis of the relevant law here largely parallels that of Judge Kendig when faced with a nearly identical proposed commission and buyer's premium structure for Kiko in *In re Leedy*, 2021 WL 3671115 (Bankr. N.D. Ohio Aug. 13, 2021) (Kendig, J.); *see also In re Gerling*, 2021 WL 4994428 (Bankr. N.D. Ohio Oct. 27, 2021) (Kendig, J.) and *In re Yeater*, 2021 WL 4699074 (Bankr. N.D. Ohio Oct. 7, 2021) (Kendig, J.).

In *Leedy*, the court denied the retention of Kiko to sell a vehicle on terms similar to those in the Proposed Contract in this case. *Leedy* first found that it was unclear why the trustee needed an auctioneer to list the vehicle on an online auction site, suggesting that the trustee could do so himself without paying a commission. *Leedy* at *1. This Court has similar reservations.

The second independent reason that the *Leedy* court denied the application to employ Kiko was that the fee structure was "unacceptable." *Id.* (collecting cases showing a range of commissions and related fee structures for auctions in bankruptcy cases and noting that the "court routinely approves applications seeking a ten percent (10%) commission, plus expenses,

4

24-51904-amk    Doc 35    FILED 08/26/25    ENTERED 08/26/25 14:30:58    Page 4 of 7

as reasonable for the services rendered"). *Leedy* focused on the 10 percent buyer's premium on top of the proposed commission. *Id*. at *2. *Leedy* concluded that it could not approve the proposed buyer's premium in addition to the sale commission, regardless of whether the buyer's premium is characterized as expense reimbursement or compensation for services.

The Bankruptcy Code only allows reimbursement of professionals' expenses if they are "actual" and "necessary." 11 U.S.C. § 330(a)(1)(B). "Expenses are deemed 'actual' 'when they are in fact incurred rather than based upon guesswork, formula or pro rata allocation.'" *In re Borders Group, Inc.,* 456 B.R. 195, 203 (Bankr. S.D.N.Y. 2011)(quoting 3 COLLIER ON BANKRUPTCY § 330.04[1]). "Expenses are 'necessary' 'when incurred if they were properly required to accomplish the task for which the professional was employed.'" *Id.* "[T]he burden of establishing entitlement to expenses falls on the applicant." *Id.* Kiko's proposed expense reimbursement structure must be assessed against this standard. So must the proposed buyer's premium if it is intended as the means to reimburse Kiko for its expenses.

By contrast, to the extent the buyer's premium is intended to compensate Kiko for services rendered rather than reimbursement for expenses actually incurred, such compensation must be judged by the reasonableness standard. 11 U.S.C. § 330(a)(1)(A).

Despite the fact that only an employment application is currently pending before the Court, and not a compensation application, these compensation and expense reimbursement issues are ripe for consideration now. The Court cannot grant an employment application premised on compensation terms that the bankruptcy code does not permit. To do otherwise would unfairly disadvantage the professional, Kiko in this case, who would rely on the employment order as pre-approving its proposed compensation and expense reimbursement structure.

The buyer's premium proposed by Kiko in this case cannot be approved as an expense reimbursement because expenses must be actually incurred to be reimbursable. They cannot be estimated or derived from formulae. *Borders Group, Inc.*, 456 B.R. at 203. The Bankruptcy Code "does not authorize a flat fee for expenses." *Leedy* at *2. While it is possible that at least some of the itemized categories of expenses would be calculated on the basis of transaction value, *e.g.*, the Proxibid online bidding platform fee and the credit card fee, it is clear that at least some of the proposed expenses that would be included in the buyer's premium would not reflect actual expenses.

To the extent that the buyer's premium would be correctly recharacterized as a further compensation for services, rather than reimbursement for actual and necessary expenses, it would effectively amount to a total auctioneer compensation of 20 percent of the transaction price, combining the commission and buyer's premium, which this Court concludes is not "reasonable" pursuant to 11 U.S.C. § 330(a)(1)(A) even if that commission expressly included all expenses. As *Leedy* noted, "the concept of a buyer's premium is a fiction. This is not extra money that someone else pays. There is a total price that is paid and all money that is not paid to the estate is real money that is part of the price." *Id.* at *2. The survey of cases in *Leedy* found no examples of such a high combined compensation number being awarded. *Id.* at *1; *see also Gerling*, 2021 WL 4994428, at *1-2 (collecting further cases). The Application did not city any case law or other authorities in which an auctioneer was employed pursuant to a fee agreement that provided for compensation equal to 20 percent of the gross sales price. Therefore, under the reasonableness standard of Section 330(a)(1)(A), the Court concludes that the fees proposed in the Proposed Contract are not reasonable compensation for the services to be rendered.

6

As a result, the Application itself cannot be approved because Kiko's proposed compensation and expense reimbursement structure could not be approved on its terms when Kiko completed its work.

## **CONCLUSION**

The Court will enter a separate order, consistent with this Memorandum Decision, denying the Application without prejudice.[1] The order will not be deemed entered until the separate order has been docketed by the Clerk.

# # #

---

[1] Following the Hearing, but before the publishing of this memorandum opinion and entry of the corresponding order, the Trustee filed his amended Application to Employ Russ Kiko Associates, Inc. (Docket No. 34) (the "Amended Application"). The Court has not considered the Amended Application in reaching this decision on the original Application.